**Karriem Wali MUHAMMAD,
Plaintiff–Appellant,**

**v.**

**WARDEN, BALTIMORE CITY JAIL and United States of America and Lt. Young, Baltimore City Jail; Baltimore Police Department of Baltimore, Maryland; The District Court of Baltimore, Maryland, Defendants–Appellees.**

**No. 85–7005.**

United States Court of Appeals,
Fourth Circuit.

Argued April 6, 1987.

Decided June 8, 1988.

Edmund J. O'Meally (Blum, Yumkas, Mailman, Gutman & Denick, P.A., Baltimore, Md., on brief), for plaintiff-appellant.

Millard S. Rubenstein, Asst. City Sol. (Benjamin L. Brown, City Sol., Frank C. Derr, Asst. City Sol., J. Joseph Curran, Jr., Atty. Gen., Richard M. Kastendieck, Asst. Atty. Gen., Baltimore, Md., on brief), for defendants-appellees.

Before WIDENER and PHILLIPS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge:

■ This appeal concerns the standards which should control in deciding whether to stay a prisoner's civil rights action pending the prisoner's release from prison. Because we find the district court's explanation of its *sua sponte* stay of a prisoner's action here inadequate to permit fair review under the relevant standards, we vacate the stay order and remand for reconsideration in accordance with this opinion.

I

In 1979, while appellant Karriem Wali Muhammad was detained in the Baltimore City Jail pending trial on federal bank robbery charges, he was assaulted by a fellow inmate. Muhammad asked the Warden and a Lt. Young to investigate the assault and prosecute his assailant. Later, when Muhammad was interviewed by members of the Baltimore City Police Department he was allegedly told that he would be contacted by the courts. No court ever contacted him.

In September 1981, Muhammad filed a pro se complaint in the U.S. District Court for the District of Maryland against the United States, the Warden of the Baltimore City Jail, Lt. Young, the Baltimore City Police Department, and the District Court of Baltimore, Maryland. Along with various other complaints, Muhammad sought damages under 42 U.S.C. § 1983, and § 1985, on the theory that the District Court of Maryland failed to institute charges against his assailant and that the Warden, Lt. Young, and the Baltimore City Police Department engaged in a conspiracy to cover up the incident.

The district court summarily dismissed Muhammad's claim with prejudice, finding that he had not stated a claim under § 1983 against the Warden and Lt. Young because the complaint alleged only a single, isolated incident of violence that did not constitute a pervasive risk of harm or pattern of unchecked violence. The district court also dismissed the other claims. Before the entry of the order dismissing his complaint, Muhammad filed a motion to amend. The district court, construing Muhammad's motion as a motion for relief from judgment pursuant to Fed.R.Civ.P. 60(b)(1), denied the motion. Muhammad then appealed the order dismissing his complaint and the order denying his motion to amend. This court, while affirming most of the district court's disposition of the charges, nevertheless vacated the judgment in part and remanded so that the district court could address Muhammad's claim that the Warden, Lt. Young, the Baltimore City Police Department, and the District Court of Baltimore interfered with Muhammad's efforts to gain access to appropriate judicial procedures. *See Muhammad v. Warden, Baltimore City Jail,* slip op. No. 81–6917 (Sept. 22, 1982) [691 F.2d 495 (table)]. We said:

We recognize that Muhammad may not be entitled to relief on a claim that defendants provided information which resulted in a judicial officer's decision not to issue a warrant.... Nevertheless, if Muhammad can show that the absence of response to his inquiries resulted from the defendants' interference with his attempts to gain access to the appropriate judicial procedure, he may be entitled to relief.

Slip op. at 4.

On remand, the district court issued a scheduling order setting a trial date for Oct. 3, 1983. The defendants all moved to dismiss, and Muhammad filed a response and a motion for summary judgment. Muhammad also requested a jury trial. On May 9, 1983, Muhammad informed the court of his transfer to a federal penitentiary in Terre Haute, Indiana.

On September 9, 1983, the district court entered an order denying the motions to dismiss filed by the Warden, Lt. Young, and the Baltimore City Police Dept. The district court, however, granted the District Court of Baltimore's motion to dismiss, reasoning that the court was a creation and instrument of the State of Maryland and not subject to suit for damages without its

consent. On October 7, 1983, the district court denied Muhammad's motions for summary judgment and ordered the clerk to reclassify the case as one in which a jury trial had been demanded. The district court also postponed the trial, originally set for October 3, 1983, on the ground that another case with greater priority was set for trial on that same day.

On April 18, 1985, the district court referred Muhammad's case to a U.S. Magistrate for processing and disposition as an action challenging the conditions of confinement pursuant to 42 U.S.C. § 1983. No action was ever taken by the magistrate, and on August 16, 1985, the district court *sua sponte* ordered the case "administratively closed" pending Muhammad's release from federal prison and subject to Muhammad's right to reopen the case when he returned to Maryland. The district court's "Memorandum and Order" did not indicate the basis for the district court's decision to "administratively close" the case beyond noting that "there is no provision under federal law appropriating funds for the transportation of plaintiffs from out-of-state prisons for the purpose of prosecuting civil rights complaints." Muhammad here appeals the district court's order.

## II

The threshold issue is whether the district court's order is appealable. The district court's order, as Muhammad concedes, did not fully resolve his action or dispose of all of the issues in dispute between the parties since the order contemplates a later trial on the merits. In general, federal appellate jurisdiction depends "on the existence of a decision by the District Court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). Muhammad argues, however, that the district court's order, though it does not technically end his action, does so in practical effect. As Muhammad observes, the order administratively closing his case stays the action indefinitely, and Muhammad is not scheduled for release from federal penitentiary until 1991 at the earliest. Since he will find it difficult if not impossible to locate witnesses and conduct fresh discovery after his release, Muhammad insists that the district court's order effectively ends his lawsuit.

A number of courts have considered the appealability of district court orders staying prisoners' § 1983 lawsuits. These courts have uniformly found the district courts' actions appealable, typically relying on the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), *see, e.g., Wimberly v. Rogers*, 557 F.2d 671, 673 (9th Cir.1977), or on the "practical finality" or "death-knell" quality of such orders, *see, e.g., McKnight v. Blanchard*, 667 F.2d 477 (5th Cir.1982) ("A 'practical' construction requires that when a plaintiff's action is effectively dead, the order which killed it must be viewed as final. Effective death should be understood to comprehend any extended state of suspended animation.") *quoting Hine v. D'Artois*, 531 F.2d 726, 730 (5th Cir.1976); *see also Peterson v. Nadler*, 452 F.2d 754, 756 (8th Cir.1971) (per curiam) ("An appellate court may treat such an order as reviewable where the district court's order can have the effect of being irreparable on any subsequent appeal.").

We agree with these courts that, on one or the other of these bases, such orders may in certain cases be appealable. And we hold that the order here in issue is one which qualifies. While more dire instances of practical finality may be imagined, this one is sufficiently dire. Muhammad's earliest release date is apparently 1991, and his claim, initiated in 1981, depends on witnesses to conduct that occurred in 1979. We conclude that the open-ended delay created by the district court's order so prejudices Muhammad's ability to prosecute his claim as to render the order an appealable "final judgment."

## III

The propriety of entering this, or any, stay order in an incarcerated prisoner's civil action must be assessed in light of the broader problem presented when any such case becomes ripe for trial.* For a stay of proceedings pending release from prison is but one of several obvious options that lie within the discretion of district courts. In addition to a stay pending release, these include making provisions for the prisoner to attend in person, either at his own expense, or at government expense, and in any case in government custody; trying the case without the prisoner's presence in the courtroom, either on depositions or affidavits or with aid of video; and even trying the case without a jury in the place of incarceration. All of these trial options of course presuppose that not only is the case ripe for trial, but that trial of disputed fact issues is required. If the case may be disposed of on motion to dismiss, or for summary judgment, or for default, or the like, that of course not only obviates the problem of the plaintiff's incarceration but is the required course.

The question of what to do in these circumstances may be, and has been, presented to district courts in a variety of ways. Occasionally the incarcerated plaintiff may request issuance of a writ of *habeas corpus ad testificandum* to secure his presence at trial, *see, e.g., Holt v. Pitts,* 619 F.2d 558 (6th Cir.1980). Perhaps more typically, the need for *sua sponte* decision will simply occur to a district judge at some stage of his efforts to move the case along on his docket, *see, e.g., Stone v. Morris,* 546 F.2d 730 (7th Cir.1976) (at conference to set trial date); *Ballard v. Spradley,* 557 F.2d 476 (5th Cir.1977) (in considering whether plaintiff's presence required during trial); *Heidelberg v. Hammer,* 577 F.2d 429 (7th Cir.1978) (upon absence of plaintiff when case called for trial); *Peterson v. Nadler,* 452 F.2d 754 (8th Cir.1971) (upon plaintiff's motion for appointment of counsel, and for permission to take deposition); *Kirk v. United States,* 589 F.Supp. 808 (E.D.Va.1984) (apparently upon discovery of plaintiff's incarceration during routine review of docket). The instant case of course falls in this latter category: here the district court acted *sua sponte* in "administratively closing," i.e., staying, the action after a reference to a magistrate had produced no decision.

However the question is presented, the critical problem is that of the standards that should then guide decision. They do not vary according to the way the matter comes up. And it is to these standards that we must turn in deciding this appeal.

## IV

Ideally, of course, such a plaintiff should be present at the trial of his action, particularly if, as will ordinarily be true, his own testimony is potentially critical. Not only the appearance but the reality of justice is obviously threatened by his absence. The law recognizes this of course, but it also recognizes that there are countervailing

---

* The dissent complains—as we understand it— that in addressing the specific question whether this stay was erroneously granted, we range too broadly by discussing it in the broader context of "what to do if not stay," and shaping our remand with instructions accordingly. In our judgment, the issue can most responsibly be discussed only in this broader context, and is quite properly before us in that posture as a matter of technical appellate procedure.

The alternative proposed is simply to find error and remand, apparently without more. With all respect, we simply disagree with this as an appropriate exercise of judicial restraint and economy under the circumstances presented.

As to the dissent's apparent concern that no discussion of alternatives to summary disposition is appropriate because that alternative has not been considered, we again simply disagree with that assessment. The critical point is that the district court has certainly passed up clear opportunities to dispose of the claim summarily, thereby avoiding any necessity to decide when and how to proceed to trial while the plaintiff is incarcerated. All the defendants have made motions to dismiss on the pleadings. The plaintiff has actually made a motion for summary judgment, upon which the district court could have given an adverse judgment, *see* 10 A. Wright, Miller & Kane, *Federal Practice and Procedure: Civil* § 2720 (West 1983), but did not. The court had expressly set the case for trial and once continued it. It is therefore clear that so far as the district court was concerned when it stayed the motion, it was a case for trial, not for summary disposition.

considerations of expense, security, logistics, and docket control that prevent according prisoners any absolute right to be present. *See Price v. Johnston*, 334 U.S. 266, 285–86, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948) (incarceration is a valid basis for qualifying the right personally to plead and manage one's own cause in federal court); *see also Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed. 2d 935 (1974).

■ That an incarcerated litigant's right is necessarily qualified, however, does not mean that it can be arbitrarily denied by dismissal or indefinite stays; the law requires a reasoned consideration of the alternatives earlier summarized. *See, e.g., Wimberly*, 557 F.2d at 673 (indefinite stay held denial of due process where entered arbitrarily). To safeguard the qualified right, a number of courts of appeals have required specific consideration of the critical factors that should control the decision whether and how to proceed.

The Fifth Circuit, reviewing a district court's issuance of a writ of *habeas corpus ad testificandum* in *Ballard v. Spradley*, 557 F.2d at 480–81, has held that in deciding whether to follow that course

> the district court must exercise its discretion based upon consideration of such factors as whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, and whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted.... The court should not base the exercise of its discretion on the probability that a prisoner will succeed on the merits of the claim or a presumption that the correctional institution has acted correctly with regard to the prisoner's complaint.

The Seventh Circuit, in *Stone v. Morris*, 546 F.2d 730, 735–36 (7th Cir.1976), prescribed a slightly different list of factors:

> In making his determination [whether the prisoner should be present in a civil action] the district judge should take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition.

As the court noted in *Stone*,

> The interests of the inmate in presenting his testimony in person rather than by deposition subsumes other factors or considerations such as whether the trial is to be to the court or to a jury, whether the prisoner has any other witnesses to call at trial or whether, as here, the prisoner is the only person who can render testimony consistent with the allegations of his complaint, and whether the defendants themselves plan to take the witness stand.

546 F.2d at 736. And to these factors, the Seventh Circuit has later added "the possible interests of a defendant in having a claim of wrongdoing decided within a reasonable time and not left pending against him." *Heidelberg v. Hammer*, 577 F.2d 429, 431 (7th Cir.1978).

In identifying the factors to be considered, these courts have not suggested any particular order of precedence for the various options. But they unmistakably imply that first consideration should be given to securing the prisoner's presence at trial, since this is the right, albeit a qualified one, that is at stake. Thus, in *Holt v. Pitts*, 619 F.2d 558, 561–62 (6th Cir.1980), the court concluded that "when an inmate's civil action reaches the trial stage, and his claim proves sufficiently meritorious to survive motions for dismissal and summary judgment, a court must then take all reasonable steps necessary to insure that the inmate receives the fair 'day in court' to which he is entitled." And the decisions as unmistakably imply that the most drastic

alternatives of dismissal for failure to prosecute or indefinite stay should only be considered, if at all, as last resorts after all other alternatives, starting with securing the prisoner's presence, have been rejected. *See, e.g., Heidelberg*, 577 F.2d at 431 (dismissal for want of prosecution inappropriate "at least until other possible methods of disposing of the case on the merits, such as a bench trial in the prison if the plaintiff waived a jury, or trial by depositions, had been explored and found not to be feasible"); *see also Peterson*, 452 F.2d at 756–57 (suggesting trial on deposition as preferred alternative to indefinite stay).

While this circuit has not prescribed standards for determining how to proceed in these matters in a published opinion, a district court opinion from this circuit written by the late Judge Warriner provides an interesting model for handling this problem. *See Kirk v. United States*, 589 F.Supp. 808 (E.D.Va.1984). In *Kirk*, acting *sua sponte*, Judge Warriner first indicated his awareness of the precedence to be accorded consideration of the various alternatives by ordering the plaintiff to show cause why a writ should be issued to secure his presence. Having thus put the burden on the prisoner to demonstrate why this generally preferred alternative was the appropriate one in the case at hand, Judge Warriner, specifically applying the *Stone* criteria, 589 F.Supp. at 809, decided that this alternative was not feasible. But in rejecting this course, he offered the plaintiff an opportunity to suggest "appropriate alternatives," observing that the "plaintiff might wish to proceed by affidavit, deposition, by tape recording, by videotape, by the administrative record, or other such means of presenting his case." 589 F.Supp. at 810. He also offered the prisoner the alternative of a stay of the case pending his release.

## V

■ Drawing upon the decisions above discussed, we conclude that district courts confronting this problem, no matter how it is presented, should proceed as follows. First consideration should be given to se-

curing the prisoner's presence, at his own or government expense, for trial of his action. If that is determined to be infeasible, all other reasonably available alternatives to trial with his presence should be considered, with indefinite stays and dismissals for failure to prosecute only being considered, if at all, as last resorts. In deciding which alternative to follow, the court should consider at a minimum the following factors:

(1) Whether the prisoner's presence will substantially further the resolution of the case, and whether alternative ways of proceeding, such as trial on depositions, offer an acceptable alternative.

(2) The expense and potential security risk entailed in transporting and holding the prisoner in custody for the duration of the trial.

(3) The likelihood that a stay pending the prisoner's release will prejudice his opportunity to present his claim, or the defendant's right to a speedy resolution of the claim.

In considering the propriety of a stay of proceedings, the court should be specifically mindful of the Supreme Court's admonition in *Landis v. North American Co.*, 299 U.S. 248, 256–57, 57 S.Ct. 163, 166–67, 81 L.Ed. 153 (1936), that a stay may not be "immoderate in extent" nor "oppressive in its consequences" and that it is "immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible to prevision and description."

■ Because meaningful review of such decisions requires an adequate record of the decisional process, the district court should record the basis for its decision, including the factors it considered.

## VI

Here, the specific decision we review is that of imposing an indefinite stay by administratively closing the case pending plaintiff's release from prison. This, as indicated, is one of the most drastic possible alternatives available for consideration

by the court. So far as we can tell, no consideration was given to less drastic alternatives, including that of securing the prisoner's presence by writ.

We conclude therefore that we must vacate the order and remand for reconsideration of the proper course in accordance with the procedure outlined in this opinion.

█ In remanding for this purpose, it is necessary to deal with one subsidiary issue raised by the defendants. They contend that the first option to be considered, issuance of a writ of *habeas corpus ad testificandum,* is not an open one here. Muhammad is currently incarcerated in Terre Haute, Indiana, and they contend that the writ of *habeas corpus ad testificandum* cannot be issued extraterritorially in any event. We disagree with the appellees' contention. The district court may ultimately decide that the writ should not be issued, but the court would not exceed its authority were it to decide otherwise.

The issuance of writs of habeas corpus is governed by 28 U.S.C. § 2241, which provides in pertinent part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions ...

(c) The writ of habeas corpus shall not extend to a prisoner unless—

(5) It is necessary to bring him into court to testify or for trial.

Since subsection (a) grants the authority to issue writs of habeas corpus "within their respective jurisdictions," a number of courts once believed that the writ of *habeas corpus ad testificandum* could not be issued extraterritorially. In *Carbo v. U.S.,* 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961), the Supreme Court qualified the apparent limiting phrase in the statute by finding that a district court in California could issue a writ of *habeas corpus ad prosequendum* to a New York City prison official to turn over a prisoner to stand trial in California. According to the Supreme Court, the limiting phrase applied to the writ of *habeas corpus ad subjiciendum* but not to the writ of *habeas corpus*

*ad prosequendum.* The Supreme Court's decision was based on a statutory analysis of § 2241(c)(5), which *also* governs the writ of *habeas corpus ad testificandum.* The Supreme Court, however, expressly refused to decide whether the writ of *habeas corpus ad testificandum* could be issued extraterritorially.

While *Carbo* left the issue open, most courts have now recognized that the analysis used by the Supreme Court applies equally to the writs of *habeas corpus ad testificandum* and *habeas corpus ad prosequendum.* As noted succinctly in *Maurer v. Pitchess,* 530 F.Supp. 77 (C.D.Cal. 1981):

The *Carbo* analysis of the statutory history of the habeas power is ... equally applicable to the writ of *habeas corpus ad testificandum.* The geographic limitation of the habeas power was specifically intended to apply only to the "Great Writ" and not to *habeas corpus ad prosequendum.* The power of the district court to issue the writ of *habeas corpus ad prosequendum* is not geographically restricted. The statutory antecedents for *habeas corpus ad prosequendum* and *habeas corpus ad testificandum* are exactly the same..... *Habeas corpus ad testificandum* is therefore not territorily limited by 28 U.S.C. § 2241(a).

530 F.Supp. at 79. *See also Word v. North Carolina,* 406 F.2d 352, 356 n. 5 (4th Cir. 1969) (dicta) (suggesting that "the remaining doubt about the reach of habeas corpus *ad testificandum* is insubstantial").

## VII

Finally, we observe in remanding that as a preliminary matter the court may, if so advised, consider whether the pending claims may yet be subject to summary adjudication without trial. Though the record indicates that the court has formally determined, in response to defendants' motions, that the claims against the Warden, Lt. Young, and the Police Department must go to trial, we were advised on oral argument that those defendants are prepared to renew their motion for summary judgment.

Whether that should be allowed, if sought, we of course leave to the district court.

VACATED AND REMANDED.

WIDENER, Circuit Judge, concurring and dissenting:

I agree with the majority that the order of the district court is appealable. I do not think that such a case should be closed for what amounts to merely administrative convenience. I further agree that the case must be remanded. But, at that point my agreement with the majority ends. The balance of the majority opinion is based on the proposition that the plaintiff's case has survived a summary judgment motion filed by the defendants. Because the record does not support the fact that such motion was ever filed, I cannot join the balance of the majority's decision, and, as to deciding those questions, I respectfully dissent.

I suggest we reach out far too far in order to decide the questions that the opinion is really devoted to.

The record from beginning to end discloses that no motion for summary judgment was filed by the defendants.

The majority has correctly set its guideline (p. 112) within the quotation in *Holt v. Pitts,* 619 F.2d 558, 561–62 (6th Cir.1980), that

> "when an inmate's civil action *reaches the trial stage, and his claim proves sufficiently meritorious to survive motions for dismissal and summary judgment,* a court must then take all reasonable steps necessary to insure that the inmate receives the 'fair day in court' to which he is entitled." (Italics added by this writer)

I agree with that statement from *Holt.* What I do not agree with is the majority's failure to follow the very quotation within which it has set its decision.

This case has not "reache[d] the trial stage," for the claim here has not been proven to be "sufficiently meritorious to survive motions for dismissal and summary judgment." While it has survived motions to dismiss, no motion for summary judgment has yet been made, and so the case is not "ripe for trial" as the majority correctly relates the standard on p. 111 of its opinion. Until the case is "ripe for trial", there is no need for a district court to decide, for it is not called upon to decide, what it is going to do, if anything, about a prisoner plaintiff who is lodged in a prison in another State some distance from the place of holding court. Neither is the district court called upon to decide whether or not a writ of habeas corpus ad testificandum should or may issue, or whether such a writ may be issued extraterritorially. The majority has decided all these knotty questions, which are not free from doubt or conflicting decisions, without being called upon so to do.

My conclusion that we reach out too far is fortified by the majority opinion itself which does not mention whether or not the prisoner's claim has survived a motion for summary judgment but proceeds upon the necessary inference that it has, which is not the fact.

Further support for my position is contained in the majority's unnumbered footnote on page 111 of its opinion.

Being unable to avoid the fact that the defendants did not file a motion for summary judgment, the majority now relies on the fact that the district court might have granted summary judgment to the defendants upon the motions for summary judgment made by the plaintiff. What the footnote does not explain is that in *Fountain v. Filson,* 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971 (1949), the Court reversed a court of appeals which had awarded summary judgment to a party who had not made a motion therefor in the district court. The court based its decision on the fact that, since the district court had not considered the matter, there was no notice to the party against whom summary judgment was entered. Thus, while summary judgment may be entered in favor of a party not so moving, it may not be done without notice, as the majority opinion fairly may be read to imply.

In deciding the case "in the broader context," as the majority describes its own opinion, the majority opinion simply dis-

agrees that leaving the question open to be decided by the district court would be "an appropriate exercise of judicial restraint and economy." The problem is that judicial restraint and judicial economy are frequently antithetical as they are here. Especially in the case of a constitutional question, judicial restraint must prevail, and here the question is the constitutional right of access to the courts.

I suggest the majority does not heed the long recognized rules of construction set out in *Ashwander v. TVA*, 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Justice Brandeis concurring).

> (2) The Court will not 'anticipate a question of constitutional law in advance of the necessity of deciding it.' ... 'It is not the habit of the Court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.' ...

> (3) The Court will not 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' ... (Citations omitted)

In sum, I would remand the case and permit the defendants to file a motion for summary judgment. The case should then go on from there. We have no call and, indeed, no warrant to proceed further.