**ORDERED** that Civil No. 91–405 is consolidated with this matter.

**Anthony D. HAWKS, Jr., Plaintiff,**

v.

**Christopher TIMMS, et al., Defendants.**

**No. Civ. PJM 96–82.**

United States District Court,
D. Maryland.

Jan. 26, 1999.

---

**8.** Defendant contends that because the original complaint, filed over seven years ago and subsequently amended, refers to her "on information and belief" as the "record title holder," S & S is barred from challenging her right to the title. Such a claim is without merit.

John F. Morkan, III, Jeffrey A. Regner, Ober, Kaler, Grimes & Shriver, Baltimore, MD, for Anthony D. Hawks.

Anthony D. Hawks, Lewisburg, PA, plaintiff pro se.

Robert C. Verderaime, Neil Joseph Bixler, Baltimore, MD, for defendants.

## OPINION

MESSITTE, District Judge.

### I.

In this civil rights action, Plaintiff Anthony D. Hawks, Jr. seeks damages arising out of beatings he allegedly sustained when arrested in separate incidents in 1993 and 1994. Defendants Christopher Timms, Allen Adkins, and Paul Abell, all Baltimore City police officers, are said to have participated in the beatings in one form or another. Hawks is currently serving a 26 plus year sentence at the Federal Penitentiary in Lewisburg, Pennsylvania. He requests the Court to permit him to personally attend the trial of his case in Maryland and to do so at government expense.

A three-day jury trial has been scheduled for February 16, 1999. The Court will GRANT Hawks' request.

### II.

Prisoner-plaintiffs have a right to access to the courts, *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), *Ex Parte Hull,* 312 U.S. 546, 549, 61 S.Ct. 640, 85 L.Ed. 1034 (1941), but do not have an absolute right to be physically present at the trial of civil claims brought by them. *Price v. Johnston,* 334 U.S. 266, 284–85, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948), overruled on other grounds by *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

The Fourth Circuit had occasion to address a plaintiff-prisoner's rights in *Muhammad v. Warden, Baltimore City Jail,* 849 F.2d 107 (4th Cir.1988). The crucial question in *Muhammad* was whether the district court could enter a lengthy stay of the proceeding pending the prisoner's release from custody:

> The propriety of entering this, or any, stay order in an incarcerated prisoner's civil action must be assessed in light of the broader problem presented when any such case becomes ripe for trial. For a stay of proceedings pending release from prison is but one of several obvious options that lie within the discretion of district courts. In addition to a stay pending release, these include making provisions for the prisoner to attend in person, either at his own expense, or at government expense, and in any case in government custody; trying the case without the prisoner's presence in the courtroom, either on depositions or affidavits or with aid of video; and even trying the case without a jury in the place of incarceration. All of these trial options of course presuppose that not only is the case ripe for trial, but that trial of disputed fact issues is required. If the case may be disposed of on motion to dismiss, or for summary judgment, or for default, or the like, that of course not only obviates the problem of the plaintiff's incarceration but is the required course. (Footnotes omitted)

849 F.2d at 111.

The Court went on:

> Ideally, of course, such a plaintiff should be present at the trial of his action, particularly if, as will ordinarily be true, his own testimony is potentially critical. Not only the appearance but the reality of justice is obviously threatened by his absence. The

law recognizes this of course, but it also recognizes that there are countervailing considerations of expense, security, logistics, and docket control that prevent according prisoners any absolute right to be present. *See Price v. Johnston,* 334 U.S. 266, 285–86, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948) (incarceration is a valid basis for qualifying the right personally to plead and manage one's own cause in federal court); *see also Wolff v. McDonnell,* 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974).

849 F.2d at 111–12.

After reviewing the case law in other circuits and a district court decision from the Fourth Circuit, *Kirk v. United States,* 589 F.Supp. 808 (E.D.Va.1984), the Court detailed the factors that district courts should consider regarding the prisoner-plaintiff's presence at his civil trial:

> [W]e conclude that district courts confronting this problem, no matter how it is presented, should proceed as follows. First consideration should be given to securing the prisoner's presence, at his own or government expense, for trial of his action. If that is determined to be infeasible, all other reasonably available alternatives to trial with his presence should be considered, with indefinite stays and dismissals for failure to prosecute only being considered, if at all, as last resorts. In deciding which alternative to follow, the court shall consider at a minimum the following factors:
>
> (1) Whether the prisoner's presence will substantially further the resolution of the case, and whether alternative ways of proceeding, such as trial on depositions, offer an acceptable alternative.
>
> (2) The expense and potential security risk entailed in transporting and holding the prisoner in custody for the duration of the trial.
>
> (3) The likelihood that a stay pending the prisoner's release will prejudice his opportunity to present his claim, or the defendant's right to a speedy resolution of the claim.

   *    *    *    *    *    *

Because meaningful review of such decisions requires an adequate record of the decisional process, the district court should record the basis for its decision, including the factors it considered.

849 F.2d at 113.

The Court evaluates the present case in light of *Muhammad.*

### III.

As set out in the Second Amended Complaint and in his deposition, Hawks tells the following story:

On November 11, 1993 he was returning to his home in Baltimore with a friend. After he dropped the friend off, he walked up the street toward the corner where he encountered Defendant Timms. Timms, who was in the neighborhood responding to complaints of drug activity, made a grab at Hawks as he walked past but Hawks apparently moved on. Further down the street, Timms allegedly pulled out his gun and told Hawks to halt, at which point Hawks ran.

According to Hawks, Timms then pushed Hawks into an alley, handcuffed him to a fence, and beat him 3 or 4 times over the head and back. Hawks did not resist, but told Timms and Defendant Abell that he wished to go to the hospital. This request was refused. Hawks and Abell deny these allegations and contend that Hawks resisted the arrest.

All criminal charges against Hawks arising out of this incident were eventually dismissed.

The second incident is said to have occurred in the morning hours of January 8, 1994. According to Hawks, several police officers knocked on the front door of his home while he was in the bathroom. They then crashed through the front door, entered the bathroom and tackled him. He was thrown on a bed and handcuffed, at which point the same Officer Timms entered the room with a gun in his hand, jumped on Hawks' back with his knees, and proceeded to beat Hawks on the back, head and shoulders 4 or 5 times. Accompanied by Defendant Adkins, Timms allegedly pulled on Hawks' ear until it bled and cuffed him so

tightly that his wrists turned blue. After the beating, the officers searched the home and took Hawks into custody. He was eventually convicted of a possession of a firearm by a convicted felon, possession with intent to distribute cocaine and heroin, and use of a firearm in relation to a drug trafficking crime, for which he received a total sentence in excess of 26 years.

Again Defendants deny all allegations of excessive force.

No dispositive motions have been filed by them.

## IV.

*Muhammad* clearly teaches that the issue of a prisoner-plaintiff's presence at trial only arises once a case is ripe for trial, which presupposes that trial of disputed fact issues is required:

> If the case may be disposed of on motion to dismiss, or for summary judgment, or for default, or the like, that of course not only obviates the problem of the plaintiff's incarceration but is the required course.

849 F.2d at 111.

Somewhat curiously, no dispositive motions have been filed in this case.

At least as to the 1994 arrest, as a result of which Hawks was convicted of serious offenses, the Court has been told nothing of the background of the arrest, beginning with what was presumably a search or arrest warrant. Yet, depending on the circumstances, a reasonable amount of force might have been used in the apprehension without the officers incurring the risk of civil liability. *See Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir.1988). A dispositive motion would have been an appropriate vehicle for testing Hawks' claim.[1]

In the absence of such a motion, the Court has little choice but to permit the claim to go forward.

## V.

The first factor to consider under *Muhammad* is whether a plaintiff-prisoner's presence at his civil trial will substantially further resolution of the case or whether other means of proceeding, such by affidavit or deposition, offer an acceptable alternative. *Muhammad*, 849 F.2d at 113.

It is clear that whether Hawks has a viable claim will depend entirely on his own testimony and credibility. As Hawks points out, Defendant police officers will be present in the Court to tell their story and establish eye contact and rapport with the jury. If Hawks "appears" only through affidavit or deposition, he will be put at a significant disadvantage. In *Latiolais v. Whitley*, 93 F.3d 205, 207 (5th Cir.1996), the Fifth Circuit discussed the credibility factor as it relates to the decision of whether a prisoner-plaintiff should be present at his trial:

> Plaintiffs' case turned largely on judging the credibility of the prisoners versus the prison officials. While the need to make credibility assessments "does not mean, of course, that the petitioner's presence will be required," it is an important consideration to be carefully weighed....

93 F.3d at 208 (quoting *Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir.1977)). *See also Carter v. Hutto*, 781 F.2d 1028, 1032 (4th Cir.1986) ("Where the record requires the trier of fact to make credibility choices, the need to observe the principal witnesses requires no elaboration"). The credibility factor argues in favor of Hawks' presence in this case.

The second *Muhammad* factor is the expense and potential security risk entailed in transporting and holding the prisoner-plaintiff in custody for the duration of the trial.

The Court *sua sponte* has inquired of the U.S. Marshal in this District regarding to the

---

1. This is a different proposition from the proposition of whether the probability of Hawks' success on the merits ought to be considered in determining whether his physical presence is necessary during trial. As to the latter proposition, *Muhammad* cites cases from the Fifth and Seventh Circuits, the first of which disavows probable success as a factor, the second of which takes it into account. *See Ballard v. Spradley*, 557 F.2d 476, 480–81 (5th Cir.1977); *Stone v. Morris*, 546 F.2d 730, 735–36 (7th Cir.1976). Although *Muhammad* does not expressly disavow probable success as a factor bearing on the presence issue, the failure of the opinion to expressly adopt it as a factor, *see* 849 F.2d at 111–12, suggests that it should not be considered.

expense of bringing Hawks from Lewisburg, Pennsylvania, to Greenbelt, Maryland for a three-day trial. The Marshal's Office has advised that it will not be excessive. The Court takes judicial notice of the fact that Lewisburg, Pennsylvania, is only 135 miles from Baltimore, where Hawks' trial might have been held,[2] not much more distant from Baltimore than the most distant point within the State of Maryland to Baltimore. Thus the fact that Hawks is confined out of State presents no particular impediment to his being transported here.

The Marshal's Office has also advised that Hawks would present no particular problem of security if transported and temporarily housed here. As Hawks points out, this Court regularly brings prisoners into the courtroom for criminal and civil matters. There is no expectation that Hawks would comport himself any differently from any other prisoner. Accordingly, the second *Muhammad* factor favors Hawks' presence at trial.

The third factor under *Muhammad* is whether a stay would be appropriate in the circumstances or whether it would prejudice Hawks' opportunity to present his claim. Given that Hawks has completed just 5 years of a 26 year sentence, any stay of his case pending release would obviously be unreasonable. The Court is therefore satisfied that Hawks should be permitted to attend his trial.

The final consideration is whether Hawks should be brought to trial in Maryland at his own or at the government's expense. In light of the representation by Hawks' counsel that he is indigent, the Court agrees that the government should bear the expense of his

transportation.[3] As the Court observed in *Greene v. Prunty*, 938 F.Supp. 637, 640 (S.D.Cal.1996):

> Once the district court has determined that the prisoner's presence is essential and not outweighed by security concerns, the possibility that a lack of transportation funds or personnel will develop is not a justification for refusing to issue the writ [of habeas corpus ad testificandum].

As indicated, Lewisburg, Pennsylvania is not particularly distant from Maryland and the trial is only projected to last 3 days. In view of this, the Court will permit Hawks to be present at his trial. The United States will be directed to pay for his transportation to and from Maryland and for his temporary detention while here.[4]

A separate Order will be signed implementing this decision.

### ORDER

The Court having considered Defendants' Motion by Request of Court and Plaintiff's response in support thereof, it is for the reasons set forth in the accompanying Opinion this 25th day of January, 1999, ORDERED:

1) As hereafter set forth, the U.S. Marshal's Office of this District shall transport Plaintiff Anthony D. Hawks, Jr., presently incarcerated in the Federal Penitentiary in Lewisburg, Pennsylvania, to an appropriate detention facility in the District of Maryland accessible to the Southern Division Courthouse in Greenbelt.

2) Hawks shall be picked up and transported to Maryland on February 15, 1999 and shall be returned to Lewisburg on Feb-

---

2. In this District, prisoner civil rights and habeas corpus cases do not automatically fall to the Northern Division in Baltimore or the Southern Division in Greenbelt, but are evenly distributed among all Judges of the District. Hence, assignment of the Hawks case to the Southern Division in Greenbelt was a happenstance.

3. While the Court accepts counsel's representation as to Hawks' indigency to be true, Hawks is nevertheless directed to submit an affidavit to the Court within 15 days detailing his assets, liabilities, income, and expenses.

4. The procedural vehicle for securing the attendance of a prisoner-plaintiff in civil litigation is the writ of habeas corpus ad testificandum. *See Pollard v. White*, 738 F.2d 1124, 1125 (11th Cir. 1984). The writ is not geographically limited and may be used to compel the attendance of a prisoner-litigant incarcerated outside the court's geographical jurisdiction. *See Muhammad*, 849 F.2d at 114 (1988). Hawks' counsel shall take such steps as may be necessary to see to the issuance of the writ in this case. The U.S. Marshal's Office has asked that it have the opportunity to review the writ before it issues.

ruary 19, 1999 or on such earlier or later date as indicated by the Court.

3) Hawks shall be detained in the Maryland detention facility during his presence in Maryland.

4) The cost of Hawks' transportation to and from Maryland and of his detention while in this State shall be borne by the United States Government.

5) Hawks shall be transported between the Maryland detention facility and the U.S. Courthouse in Greenbelt for trial on February 16, 17 and 18, 1999.