Gary William HOLT, Plaintiff-Appellant,

v.

Jerry PITTS, Sheriff,
Defendant-Appellee.

No. 78–1561.

United States Court of Appeals,
Sixth Circuit.

Submitted Dec. 4, 1979.

Decided Feb. 27, 1980.

Gary William Holt, pro se.

Gus A. Wood, III, Morgan, Garner, Wood & Guthrie, Chattanooga, Tenn., for defendant-appellee.

Before WEICK and BROWN, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Plaintiff, while he was incarcerated in the federal penitentiary in Terre Haute, Indiana, brought a *pro se* civil rights action against defendant Jerry Pitts, pursuant to 42 U.S.C. § 1983.[1] The events which allegedly gave rise to plaintiff's cause of action occurred in Chattanooga, Tennessee, and plaintiff properly commenced his action in the United States District Court for the Eastern District of Tennessee.[2] When plaintiff did not appear at two preliminary hearings because of his custody in a federal penitentiary, the district court dismissed his action for failure to prosecute. *See* Fed.R. Civ.P. 41(b).[3] Plaintiff has properly appealed this dismissal,[4] and we reverse.

The issues now before us concern the rights of an incarcerated criminal to prosecute a *pro se* civil rights action. This is an area of law that requires creative but cautious rulemaking. On the one hand, courts must be empowered to deal effectively with frivolous, repetitive, or unduly protracted law suits. *See, e. g., Link v. Wabash R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Petty v. Manpower, Inc.,* 591 F.2d 615 (10th Cir. 1979); *Hepperle v. Johnston,* 590 F.2d 609 (5th Cir. 1979); *Lopez v. Aransas County Independent School District,* 570 F.2d 541 (5th Cir. 1978); *Hughley v. Eaton Corp.,* 572 F.2d 556 (6th Cir. 1978); *Marshall v. Sielaff,* 492 F.2d 917 (3d Cir. 1974); *Conway v. Dunbar,* 448 F.2d 765 (9th Cir. 1971); *Mayberry v. Robinson,* 427 F.Supp. 297 (M.D.Pa.1977). On the other hand, prison inmates must not be denied adequate means of securing redress for violations of their constitutional rights. We approach the present appeal with both of these considerations in mind.

## STATEMENT OF THE CASE

In his *pro se* complaint, plaintiff stated that, prior to his confinement in the federal penitentiary in Terre Haute, Indiana, he had been temporarily confined in the Hamilton County jail in Chattanooga, Tennessee. Plaintiff alleged that, at the time of his confinement in Chattanooga, he had been denied various First Amendment rights by defendant Pitts, sheriff of Hamilton County, and by those who had worked under Pitts' supervision.

The district court, after a review of the record in the case, concluded that two of plaintiff's allegations could conceivably sup-

---

1. 42 U.S.C. § 1983 reads:
   **Civil action for deprivation of rights**
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. There is no special venue statute for civil rights actions, and thus venue is controlled by 28 U.S.C. § 1391 (nondiversity actions are to be brought either in the district where all defendants reside or in the district in which the claim arose). Plaintiff's claim allegedly arose in Chattanooga, Tennessee, and thus venue for his action was proper in the District Court for the Eastern District of Tennessee.

3. Fed.R.Civ.P. 41(b) reads:
   INVOLUNTARY DISMISSALS: EFFECT THEREOF. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against

him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of this evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

4. A dismissal pursuant to Fed.R.Civ.P. 41(b) is a final order that is subject to appeal. *See J. Moore, Federal Practice* ¶ 41.11[2], at 41–148 (2d ed. 1978).

port a cause of action under section 1983; first, the allegation that Pitts had refused to provide plaintiff with various law books, and second, the allegation that Pitts had improperly interfered with so-called "legal mail" that had been sent to plaintiff at the county jail. The district court ordered defendant to respond to these allegations, and defendant filed an appropriate response in a timely fashion. Subsequently, both plaintiff and defendant exchanged sets of interrogatories and answers.

Within the course of these initial proceedings, plaintiff requested the district court to conduct a preliminary hearing, as authorized by Fed.R.Civ.P. 12(d).[5] The court granted plaintiff's motion, and the hearing was held, as scheduled, on June 28, 1978; however, plaintiff failed to appear at the hearing either in person or through counsel. As a result of this absence, the district court dismissed plaintiff's complaint for failure to prosecute. Fed.R.Civ.P. 41(b).

A short time after his complaint had been dismissed, plaintiff sent the district court a document that he had styled "Motion For Good Cause Shown." Therein, plaintiff asserted that he had not received notice of the June 28 hearing until July 6 because of his transfer from the federal penitentiary in Terre Haute, Indiana, to the federal penitentiary in Lompoc, California. In the light of plaintiff's assertion, the district court vacated its order of dismissal, and rescheduled the date of the preliminary hearing to August 16, 1978. Nine days later, plaintiff requested the district court to issue a special writ, pursuant to 28 U.S.C. § 1651,[6] to require the penal authorities in California to produce him at the August 16 hearing in Tennessee. The court denied plaintiff's request on the ground that the underlying

action was civil, and not criminal in nature. To no one's surprise, plaintiff failed to appear in person at the August 16 hearing. On that date, plaintiff was obviously in custody in the federal penitentiary in California. Further, plaintiff was not represented by counsel at the August 16 hearing. Apparently, plaintiff chose to continue the prosecution of his case on a *pro se* basis. As a result of this second absence, the district court for the second time dismissed plaintiff's complaint for failure to prosecute. This order of dismissal is the subject of the present appeal.

## I

The first issue before the Court is whether the district judge acted properly in denying plaintiff's request for a writ, pursuant to 28 U.S.C. § 1651. We conclude that the district court's denial of plaintiff's request was an exercise of sound discretion.

■ Generally speaking, prisoners who bring civil actions, including prisoners who bring actions under the civil rights statute, 42 U.S.C. § 1983, have no right to be personally present at any stage of the judicial proceedings. In *Price v. Johnston*, 334 U.S. 266, 285–86, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948), the Supreme Court stated this principle succinctly:

Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Among those so limited is the otherwise unqualified right given by § 272 of the Judicial Code, 28 U.S.C. § 394 [now 28 U.S.C. § 1654] to parties in all courts of the United States to "plead and manage their own causes personally."

---

5. Fed.R.Civ.P. 12(d) gives the trial court discretion to conduct a preliminary hearing either on a motion for judgment on the pleadings or on certain defenses such as lack of jurisdiction over subject matter, lack of jurisdiction of the person, improper venue, insufficient process or service of process, and failure to join an indispensable party. The purpose of such hearing is to allow the trial court to decide promptly issues that need not be deferred until trial. *See J. Moore, Federal Practice* ¶ 12.16 (2d ed. 1978).

6. 28 U.S.C. § 1651(a) reads:

**Writs**

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the useages and principles of law.

See also *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974); *Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir. 1977); *Stone v. Morris*, 546 F.2d 730, 735 (7th Cir. 1976); *Matter of Warden of Wisconsin State Prison*, 541 F.2d 177, 180–81 (7th Cir. 1976); *Clark v. Hendrix*, 397 F.Supp. 966, 969 (N.D.Ga.1975).

Nonetheless, 28 U.S.C. § 1651(a) provides that "the Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." This statutory provision empowers the federal courts to issue writs requiring penal authorities to produce prisoners at judicial proceedings in civil cases. However, it is settled law that the decision of a court to issue a § 1651 writ is a matter that rests solely within the court's discretion. Further, a court should issue a writ that requires the production of a prisoner only in those cases where the prisoner's physical presence will contribute significantly to a fair adjudication of his claims. In *Price v. Johnston*, *supra*, 334 U.S. at 284–85, 68 S.Ct. at 1059–1060, the Supreme Court outlined the considerations that an appellate court should weigh when deciding whether to issue a writ to enable a prisoner to argue his case personally:[7]

> [T]his discretion is to be exercised with the best interests of both the prisoner and the government in mind. If it is apparent that the request of the prisoner to argue personally reflects something more than a mere desire to be freed temporarily from the confines of the prison, that he is capable of conducting an intelligent and responsible argument and that his presence in the courtroom may be secured without undue inconvenience or danger, the court would be justified in issuing the writ. But if any of those factors were found to be negative, the court might well decline to order the prisoner to be produced.

Likewise, the Seventh Circuit Court of Appeals in *Stone v. Morris*, *supra*, 546 F.2d at 735–36, enumerated the considerations that a trial court should take into account when determining whether an inmate should be brought to the trial of his civil claims (specifically, his claims under 42 U.S.C. § 1983):

> In making his determination the district judge should take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition.

*See also Ballard v. Spradley, supra*, 557 F.2d 476, 480–81 (5th Cir. 1977).

■■ In view of the factors set forth in cases such as *Price* and *Stone*, *supra*, it is readily apparent that the district court properly exercised its discretion in denying plaintiff's request for a § 1651 writ. The cost and inconvenience that would have been involved in the transportation of plaintiff from the federal penitentiary in California to the district courthouse in Tennessee would have been entirely disproportionate to the prospective benefits. Further, and more importantly, plaintiff requested the issuance of the § 1651 writ during a pre-trial phase of the court proceedings. Although we recognize that a district court is obligated to make meaningful accommodations to an inmate at the time his civil action proceeds to trial, we conclude that the court is required to make a lesser degree of accommodation during the proceedings prior to trial. In other words, when an inmate's civil action reaches the trial stage,

---

**7.** In *Price*, the Supreme Court concluded that a federal appellate court had the power under 28 U.S.C. § 1651 to command that a prisoner be brought before it in order to present oral argument. The aspects of the *Price* opinion that deal with an appellate court's power under § 1651 are equally applicable to the power of a federal district court.

and his claim proves sufficiently meritorious to survive motions for dismissal and summary judgment, a court must then take all reasonable steps necessary to insure that the inmate receives the fair "day in court" to which he is entitled. *See, e. g., Heidelberg v. Hammer*, 577 F.2d 429, 431 (7th Cir. 1978) (a district court must pursue several avenues in an effort to decide fairly the merits of an inmate's *pro se* civil rights action; these avenues include the issuance of a writ commanding the presence of the prisoner-plaintiff, a bench trial in the prison, the presentation of evidence by means of depositions, the appointment of counsel, and the postponement of the case if the plaintiff is to be released in a reasonable time). However, this degree of accommodation is seldom, if ever required at proceedings prior to trial. Pre-trial proceedings can be, and most often are conducted by filing with the court various documents—complaints and responses, interrogatories and answers, affidavits, and written depositions. Oral testimony and factors such as the credibility of witnesses play little or no part in this preliminary phase of the court's decision-making. Moreover, in this day of burgeoning dockets, most courts (many of them by rule) submit virtually all motions without hearing oral argument. Accordingly, the physical presence of the plaintiff is of significantly lesser importance at the pre-trial phase of the judicial process, and we parenthetically observe that the record in the present case reflects no inadequacy which would seem to require evidentiary supplementation.

It should be noted that, because of our conclusion that the district court properly exercised its discretion in denying plaintiff's request for a § 1651 writ, we need not address the issue of whether the court was empowered to issue a writ whose reach extended beyond the court's territorial jurisdiction. As noted previously, plaintiff requested the district court (Eastern District of Tennessee) to issue a writ to require the penal authorities in California to produce him at a preliminary hearing in Tennessee. Although it appears settled that a court has the power to issue an "extraterritorial" writ in the context of a criminal case, it is unsettled whether a court has such power in the context of a civil case. *See* discussion in *Clark v. Hendrix*, 397 F.Supp. 966, 970–74 (N.D.Ga.1975). However, we leave to another day the resolution of this issue.

## II

■ We conclude that the district court properly refused to order plaintiff's production at the August 16 preliminary hearing; nonetheless, we also conclude that the court clearly abused its discretion when it dismissed plaintiff's action for failure to prosecute. Through its order of dismissal, the district court created an unnecessary and unfair trap for plaintiff. In one breath, the court acknowledged the right of plaintiff, an inmate, to bring a *pro se* civil rights action under 42 U.S.C. § 1983. However, in a second breath, the court dismissed plaintiff's action when his incarceration prevented his appearance at the August 16 hearing. This "Catch-22" is reminiscent of the writings of Joseph Heller.[8]

■ A dismissal for failure to prosecute is a harsh sanction that runs counter to the policy of the law favoring the disposition of cases on their merits. Accordingly, such dismissal should be used only in extreme situations where a plaintiff has engaged in "a clear pattern of delay or contumacious conduct." *See* cases cited in *Wright & Miller*, 9 *Federal Practice and Procedure* § 2369 at 193–96. The action of plaintiff in the present case cannot possibly be characterized either in terms of a pattern of delay or in terms of conduct that was contemptuous of the court. First, plaintiff pursued every avenue that was available to him in his effort to appear at the August 16 hearing. In fact, only nine days after the district court rescheduled the date of the prelimi-

---

**8.** *The American Heritage Dictionary of the English Language* (1976) defines a "Catch-22" as "a paradox in which seeming alternatives actually cancel each other out, leaving no means of escape from the dilemma." The term was created by Joseph Heller, the American author, in his book *Catch-22* (1961).

nary hearing, plaintiff formally requested the court to issue a writ to provide for his appearance. Second, the conduct of plaintiff, taken as a whole, suggested that he carried on the prosecution of his action with all due diligence. For example, plaintiff exchanged sets of interrogatories and answers with defendant in an expeditious manner. Third, plaintiff's absence from the August 16 hearing was both unintentional and fully explained. In *Link v. Wabash R. Co.*, *supra*, 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734, the Supreme Court indicated that a mere "unexplained" absence of a plaintiff from a pre-trial conference may not be sufficient alone to justify a dismissal for lack of prosecution. In comparison to the "unexplained" absence in *Link*, the absence of plaintiff in the present case was less serious. Herein, the district court was fully apprised, in advance, that plaintiff's incarceration would necessarily foreclose the possibility of his appearance on August 16. Finally, the fact that it was plaintiff himself who requested the August 16 hearing does not in any way suggest bad faith on plaintiff's part. When he made his request, plaintiff apparently entertained the reasonable hope that the district court would issue a writ that would enable him to appear at the hearing.

In view of all the circumstances present in this case, we feel required to hold that the district court's dismissal of plaintiff's action constituted an abuse of the court's discretion. Thus, although it appears unlikely that our action will ultimately result in relief to plaintiff, we nonetheless reverse the order of dismissal and remand the case for further proceedings consistent with this opinion.

BAILEY BROWN, Circuit Judge (concurring).

I agree that the result reached in the opinion is required by the law and therefore I concur. The fact remains, however, that the district judge is left with a pending case

that apparently calls for an evidentiary hearing,* and yet there is no way to dispose of it, so long as appellant is a prisoner in an institution far away, without great expense to the government. It is well known that the district courts have many cases such as this one gathering age. It seems that the problem presented by such cases calls for a study and ultimately, perhaps, for legislation as a guide to the courts for the proper steps to take in effecting their disposition.

---

* The district judge has held that appellant has stated a claim for relief with respect to the alleged refusal to allow him to have his law books in jail and alleged interference with his mail. The appellee has denied the allegations.