**In re John H. BURRELL, Debtor.**

**Bankruptcy No. 95–31326.**

United States Bankruptcy Court,
E.D. Tennessee.

Aug. 28, 1995.

Carl K. Kirkpatrick, U.S. Atty., Pamela G. Steele, Asst. U.S. Atty., Knoxville, TN, for U.S. and its agency, the IRS.

Gwendolyn M. Kerney, Chapter 13 Trustee, Knoxville, TN.

Ellen B. Vergos, U.S. Trustee, Region 8, Patricia C. Foster, Knoxville, TN, for U.S. Trustee.

RICHARD STAIR, Jr., Chief Judge.

The debtor, John H. Burrell, an inmate at the Morgan County Regional Correction Facility in Wartburg, Tennessee, filed a *pro se* petition under Chapter 13 of the Bankruptcy Code on June 1, 1995.[1] The debtor's incarceration is attributable to his February 19, 1993 conviction in the Criminal Court of Anderson County, Tennessee, of multiple counts of rape, sexual battery, and coercion of witnesses. On July 1, 1993, the debtor received sentences on all counts totaling twenty-four years, fines in the amount of $82,600.00, and was assessed court costs in the amount of $10,524.16.[2]

The sole creditor scheduled by the debtor is the Internal Revenue Service (IRS) whose debt is listed at Schedule F to the petition as a disputed, nonpriority unsecured claim in the amount of $10.00. The debtor lists at Schedules A and B to his petition, respectively, an interest in a timeshare condominium in Colorado valued at $4,000.00 and $100.00 cash on hand. No other assets are listed. Schedules I and J to the petition reflect that the debtor receives a monthly net sum of $1,575.63 from an unnamed pension or retirement fund and has monthly expenses of $1,416.00, thus providing him with $159.63 in monthly net disposable income.

The debtor's Chapter 13 Plan, filed contemporaneously with his petition, provides at paragraph 2 for monthly payments of $159.63 for thirty-six months, resulting in total payments under the plan of $5,746.68. The plan

John H. Burrell, Wartburg, TN, pro se.

1. This is the debtor's second Chapter 13 petition. His first, filed May 2, 1995, commencing Case No. 95–31061, was dismissed on May 19, 1995, upon the debtor's failure to file his schedules and statement of financial affairs.

2. Certified copies of the Amended Judgments establishing the debtor's convictions and sentences are affixed as exhibits to the Response to Motion for Contempt for Failure to Obey a Court Ordered Stay filed by the Internal Revenue Service on August 25, 1995.

further provides at paragraphs 1 and 3, respectively, that the "Trustee shall not file a claim on behalf of any creditor" and that the "1st payment will be made to the trustee when it is finally determined that the creditors [sic] have valid claims."[3]

On June 26, 1995, the IRS filed a Proof of Claim in the amount of $221,096.85. Of this amount, $195,496.85 is claimed as secured and $25,600.00 is claimed as entitled to priority payment under 11 U.S.C.A. § 507(a)(8) (West Supp.1995). The entire claim, which includes penalties and interest to the petition date, is based on assessments and estimates made by the IRS for the debtor's unpaid income taxes for the years 1986 through 1994. It is undisputed that the debtor has not filed Form 1040 income tax returns for the past nine years.

There are presently four matters pending before the court: (1) a Motion to Dismiss filed jointly by the IRS and the Chapter 13 Trustee, Gwendolyn M. Kerney, on July 12, 1995, seeking dismissal of the debtor's Chapter 13 case for "bad faith in filing his petition and for failure to file federal income tax returns for" the nine years preceding the filing of the petition, or alternatively, requesting that the court deny confirmation of the debtor's plan as having been filed in bad faith in contravention of 11 U.S.C.A. § 1325(a)(3) (West 1993); (2) a Motion for Contempt for Failure to Obey a Court Ordered Stay filed by the debtor on July 25, 1995, requesting sanctions pursuant to 11 U.S.C.A. § 362(h) (West 1993) against an IRS officer, Betty W. Murphy, for alleged violations of the automatic stay; (3) an Objection to United States Proof of Claim filed by the debtor on August 11, 1995, wherein the debtor objects to the allowance of the IRS's Proof of Claim because the claim was filed without accompanying supporting documents;[4] and (4) a Motion for Order to Transport filed by the debtor on August 11, 1995, requesting the court to "issue an order to the Tennessee Department of Corrections to transport the Debtor from [the Morgan County Regional Correction Facility in] Wartburg, TN to Knoxville, TN," and requesting that he be permitted to "appear in street clothes without shackles or handcuffs" at an August 30, 1995 hearing scheduled by the court on the Motion to Dismiss filed by the IRS and Chapter 13 Trustee and on the Motion for Contempt for Failure to Obey a Court Ordered Stay filed by the debtor.

On August 11, 1995, the debtor filed a Response to United States of America's Motion to Dismiss which generally attacks the Internal Revenue Code and implementing regulations requiring the filing of tax returns, and specifically attacks the necessity of filing individual income tax returns on Form 1040. Based upon a review of this response, it is fair to state that the debtor is a tax protester who does not believe that he should be required to file federal income tax returns or pay federal income taxes.

On August 25, 1995, the IRS filed a Response to Motion for Contempt for Failure to Obey a Court Ordered Stay supported by a number of exhibits, including verified Declarations executed by Revenue Officers Betty W. Murphy and Constance L. Little.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (L), (O) (West 1993).

## I

The initial issue the court will resolve is the Motion for Order to Transport filed August 11, 1995, wherein the debtor requests the court to direct the Tennessee Department of Corrections to transport him to Knoxville in order that he might participate

---

3. In an Order entered June 23, 1995, the court, in denying a Motion for Order to Transport filed by the debtor on June 21, 1995, requesting that the Tennessee Department of Corrections be compelled to transport him to his first meeting of creditors, instructed the debtor that he would be required to adhere to the dictates of 11 U.S.C.A. § 1326(a) (West 1993), which require the commencement of payments within thirty days after a Chapter 13 plan is filed.

4. The debtor's contention that the Internal Revenue Service should have appended documents in support of its Proof of Claim is interesting in view of the fact that the debtor has failed to file income tax returns for the nine years preceding the filing of his petition.

in hearings presently scheduled for August 30, 1995.

 The United States Court of Appeals for the Sixth Circuit has stated:

> Generally speaking, prisoners who bring civil actions ... have no right to be personally present at any stage of the judicial proceedings. In *Price v. Johnston*, 334 U.S. 266, 285–86, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948), the Supreme Court stated this principle succinctly:
>
>> Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Among those so limited is the otherwise unqualified right given by § 272 of the Judicial Code, 28 U.S.C. § 394 [now 28 U.S.C. § 1654] to parties in all courts of the United States to "plead and manage their own causes personally."
>
> Nonetheless, 28 U.S.C. § 1651(a) provides that "the Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." This statutory provision empowers the federal courts to issue writs requiring penal authorities to produce prisoners at judicial proceedings in civil cases. However, it is settled law that the decision of a court to issue a § 1651 writ is a matter that rests solely within the court's discretion. Further, a court should issue a writ that requires the production of a prisoner only in those cases where the prisoner's physical presence will contribute significantly to a fair adjudication of his claims.

*Holt v. Pitts*, 619 F.2d 558, 560–61 (6th Cir. 1980) (alteration in original) (citations omitted).[5]

**5.** After the Sixth Circuit issued its *Holt* decision, the United States Supreme Court determined that unless exceptional circumstances are present, 28 U.S.C.A. §§ 2241 and 2243 (West 1994), not § 1651, authorize the issuance of writs of habeas corpus ad testificandum. *Pennsylvania Bureau of Correction v. United States Marshals Serv.*, 474 U.S. 34, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985), *construed in Sales v. Marshall*, 873 F.2d 115, 118–19 (6th Cir.1989). The court need not

 The *Holt* court, in discussing the considerations a trial court should take into account when determining whether an inmate should be brought to the trial of his civil claims, stated:

> "In making his determination the district judge should take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition."

*Id.* at 561 (quoting *Stone v. Morris*, 546 F.2d 730, 735–36 (7th Cir.1976)).

In the present case, a consideration of the factors enunciated by the court in *Holt* mitigates against the issuance of a writ directing the Tennessee Department of Corrections to transport the debtor to hearings before the bankruptcy court. The court concludes that the debtor's appearance will not benefit the debtor, the court, or the IRS, because of the expense of transporting the debtor to the courtroom; the security risk and danger in bringing the debtor to the bankruptcy court, which is housed entirely in a private, high-rise office complex rather than a secure federal courthouse; and the lack of probability of the debtor gaining confirmation of his plan. Furthermore, the bankruptcy court is not the proper forum for the debtor to engage in his protest of the IRS, the Internal Revenue Code, and the Code of Federal Regulations.

address in this case whether bankruptcy courts are authorized to issue writs of habeas corpus ad testificandum, because the debtor's Motion for Order to Transport will be denied for reasons stated hereinafter. *See In re Bona*, 124 B.R. 11, 14 (S.D.N.Y.1991) ("[I]t is unnecessary to determine whether the bankruptcy court had authority to order [the debtor's] release from incarceration, since even if it had that power, [the debtor] is not entitled to relief.")

■ Additionally, this court concludes as a matter of law that the debtor's failure to file his income tax returns for 1986 through 1994, combined with the fact that this bankruptcy case was initiated primarily to further the debtor's tax protest, constitutes bad faith. As observed by one bankruptcy court, the

> debtor has enjoyed protection from collection activities by his creditors, including the IRS, while his case is pending, yet shows no sense of any duty to file his federal tax returns. Such behavior is the epitome of a lack of good faith on the part of Debtor and demands dismissal.

*In re Crayton,* 169 B.R. 243, 245 (Bankr. S.D.Ga.1994). Other courts agree. *See, e.g., In re Love,* 957 F.2d 1350, 1359 (7th Cir. 1992) ("[F]iling a Chapter 13 petition in order to thwart the payment of an otherwise nondischargeable income tax debt arising from the unlawful failure to pay income taxes was not one of the intended purposes of the bankruptcy provisions."); *Schaffner v. I.R.S.,* 95 B.R. 62, 65–66 (E.D.Mich.1988) (affirming the bankruptcy court's denial of confirmation of plan and dismissal of case filed by a tax protestor whose continued actions showed an intent to evade paying taxes); *In re Paulson,* 170 B.R. 496, 499 (Bankr.D.Conn.1994) ("All courts that have addressed the specific issue ... have concluded that the use of Chapter 13 by so-called tax protesters in an attempt to discharge their federal tax liabilities amounts to an unfair manipulation of the Bankruptcy Code."); *In re Hazel,* 68 B.R. 287, 290 (Bankr.E.D.Mich.1986) ("[I]t is bad faith pursuant to 11 U.S.C. § 1325(a)(3) to file a petition in bankruptcy and seek confirmation of a plan that discharges tax claims arising from the debtor's unlawful refusal to pay those taxes."), *aff'd,* 95 B.R. 481 (E.D.Mich.1988).[6]

In the present case, the debtor's only scheduled debt is to the IRS.[7] He seeks to use the bankruptcy court to gain the benefit of the automatic stay and as a forum to express his displeasure and disagreement with the IRS and Internal Revenue Code. His plan proposes to pay $10.00 to the Internal Revenue Service with no payments to be made by the Chapter 13 Trustee until his dispute with the IRS is resolved. Furthermore, in contravention of Fed. R. Bankr.P. 3004,[8] the debtor proposes to prohibit the Trustee from filing a proof of claim on behalf of the IRS.[9]

■ Although the debtor's Chapter 13 case will be dismissed as having been filed in bad faith, the court also notes the debtor's

---

6. The dismissal of the debtor's case is also supported under the authority of the Sixth Circuit Court of Appeals. The Sixth Circuit includes the following applicable factors in its list of eleven that should be used to determine whether a case should be dismissed for lack of good faith: (1) " ' "the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court" ' "; (2) " ' "the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7" ' "; (3) " ' "the motivation and sincerity of the debtor in seeking Chapter 13 relief" ' "; and (4) " ' "the burden which the plan's administration would place upon the trustee." ' " *Michigan Nat'l Bank v. Charfoos (In re Charfoos),* 979 F.2d 390, 393–94 (6th Cir.1992) (quoting *Hardin v. Caldwell (In re Caldwell),* 851 F.2d 852, 859 (6th Cir.1988) (quoting *United States v. Estus (In re Estus),* 695 F.2d 311, 317 (8th Cir.1982))). The application of these factors, considered under a totality of the circumstances test, leads the court to conclude that a pattern of conduct designed to avoid and protest taxes exists in this case, resulting in a finding of bad faith. *See Society Nat'l Bank v. Barrett (In re Barrett),* 964 F.2d 588, 591 (6th Cir.1992).

7. The debtor offers no explanation for his failure to schedule the $93,124.16 in fines and costs levied against him by the Anderson County Criminal Court. *See supra* note 2 and accompanying text. This nondisclosure evidences a further manifestation of the debtor's bad faith in the filing of his petition.

8. Bankruptcy Rule 3004, entitled "Filing of Claims by Debtor or Trustee," provides in material part:

> If a creditor fails to file a proof of claim on or before the first date set for the meeting of creditors called pursuant to § 341(a) of the Code, the debtor or trustee may do so in the name of the creditor, within 30 days after expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable.

Fed.R.Bankr.P. 3004.

9. This provision is meaningless in light of the claim filed directly by the IRS on June 26, 1995. Nonetheless, the debtor's intention to thwart collection of his tax obligations is obvious.

inability to obtain confirmation of his Chapter 13 Plan due to his failure to comply not only with Code § 1325(a)(3), but also § 1325(a)(1).[10] The IRS asserts a priority claim against the debtor under 11 U.S.C.A. § 507(a)(8) (West Supp.1995) in a minimum amount of $25,600.00.[11] Code § 1322(a)(2) requires that a Chapter 13 plan "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim." 11 U.S.C.A. § 1322(a)(2) (West 1993). The debtor's plan provides for payments totaling $5,746.68. The plan does not comply with the provisions of § 1322(a)(2) and, therefore, does not meet the § 1325(a)(1) confirmation requirement.

In conclusion, the August 30, 1995 hearing on the Motion to Dismiss filed by the IRS and Chapter 13 Trustee is unnecessary. The debtor's Chapter 13 case was filed in bad faith and his plan, on its face, is incapable of confirmation; therefore, the Motion to Dismiss will be granted.

## II

■ The debtor filed a Motion for Contempt for Failure to Obey a Court Ordered Stay on July 25, 1995, alleging that an IRS officer, Betty W. Murphy, violated the automatic stay when she issued a Notice of Levy following the debtor's commencement of this case on June 1, 1995. A copy of the Notice of Levy dated June 28, 1995, and a letter sent to the debtor by Martin Marietta Energy Systems, Inc., dated July 7, 1995, also regarding the tax levy were submitted by the debtor as exhibits to his Motion for Contempt. The Notice, signed by Betty W. Murphy, was sent to Martin Marietta Energy Systems, Inc., Attn: Retired Pay Division, demanding that the debtor's pension benefits be remitted to the IRS. The July 7, 1995 letter requests information from the debtor needed by Martin Marietta to calculate the exempt portion of the debtor's pension benefits. The IRS's Response to Motion for Contempt for Failure to Obey a Court Ordered Stay filed August 25, 1995, with supporting verified declarations of Betty W. Murphy and Constance L. Little, establishes that the Notice of Levy was mailed to the debtor's former employer, Martin Marietta Energy Systems, Inc., on June 28, 1995; that the levy was released on July 26, 1995, the date Ms. Murphy states that she became aware of the June 1, 1995 petition filed by the debtor; that the IRS received none of the debtor's pension money as a result of the levy; and that personnel from Martin Marietta Energy Systems, Inc.'s Pension Benefits Branch stated that the debtor would experience no delay in benefits as a result of the levy.

■ Bankruptcy courts, pursuant to 11 U.S.C.A. § 362(d) (West 1993 & Supp.1995), are permitted to annul the automatic stay, rather than merely terminate it, "[o]n request of a party in interest and after notice and a hearing."[12] See Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.), 749 F.2d 670, 675–76 (11th Cir.1984). The annulment of the stay applies retroactively and validates a creditor's actions that violated 11 U.S.C.A. § 362(a) (West 1993 & Supp. 1995). Albany Partners, Ltd., 749 F.2d at 675. The stay may be annulled only in the presence of extraordinary circumstances, which include the debtor's bad faith filing of the bankruptcy case, a creditor's lack of "knowledge of the applicability of the automatic stay," and unfair prejudice to the cred-

---

**10.** Code § 1325(a) provides in material part:
Except as provided in subsection (b), the court shall confirm a plan if—
(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
. . . .
(3) the plan has been proposed in good faith and not by any means forbidden by law[.]
11 U.S.C.A. § 1325(a) (West 1993).

**11.** Bifurcation of the $195,496.85 portion of the IRS claim listed as secured into its unsecured component pursuant to 11 U.S.C.A. § 506(a)

(West 1993) provides the IRS with an unsecured priority claim substantially in excess of $25,600.

**12.** The IRS has not moved for relief from the automatic stay. Pursuant to 11 U.S.C.A. § 105 (West 1993), the court will determine whether an annulment of the stay is proper in this case. Notice and a hearing are unnecessary given the circumstances, which include that the IRS is the only scheduled creditor in this case, and the court has determined that the case will be dismissed.

itor. *In re Lipuma,* 167 B.R. 522, 526 (Bankr.N.D.Ill.1994); *see Albany Partners, Ltd.,* 749 F.2d at 675; *Pettibone Corp. v. Baker,* 119 B.R. 603, 605 (N.D.Ill.1990).

■ As previously determined, the debtor initiated this bankruptcy case in bad faith and has presented a plan that is unconfirmable. The debtor has not invoked the automatic stay to obtain "a breathing spell from his creditors" and "to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840–41. Instead, he filed his bankruptcy case to further his tax protest by thwarting collection of his tax obligations resulting from his failure to file tax returns for nine years. While the policy behind the automatic stay requires courts to be "especially hesitant to validate acts committed during the pendency of the stay," *Albany Partners, Ltd.,* 749 F.2d at 675, sanctioning the IRS will only further the debtor's misuse of the Bankruptcy Code. Furthermore, it is difficult to see how the debtor has been injured by any violation of the stay by the IRS.[13] *See Archer v. Macomb County Bank,* 853 F.2d 497, 500 (6th Cir.1988) ("[A]n award of actual damages [under § 362(h) ] on the basis of ... vague speculation is improper."). Therefore, based on the extraordinary circumstances present in this case, the court finds that the automatic stay should be annulled to provide the IRS with retroactive relief from the stay. The debtor's Motion for Contempt for Failure to Obey a Court Ordered Stay will be denied.[14]

Finally, the dismissal of the debtor's bankruptcy case makes it unnecessary for the court to consider the debtor's Objection to United States Proof of Claim.

An appropriate order will be entered.

### *ORDER*

For the reasons set forth in the Memorandum filed this date, the court directs the following:

1. The debtor's Motion for Order to Transport filed August 11, 1995, requesting an order directing the Tennessee Department of Corrections to transport him from the Morgan County Regional Correction Facility in Wartburg, Tennessee, to Knoxville, Tennessee, on August 30, 1995, is DENIED.

2. The debtor's Motion for Contempt for Failure to Obey a Court Ordered Stay filed July 25, 1995, requesting sanctions pursuant to 11 U.S.C.A. § 362(h) (West 1993 & Supp. 1995) against Internal Revenue Service Officer Betty Murphy is DENIED.

3. The automatic stay of 11 U.S.C.A. § 362(a)(1) through (8) (West 1993), as applicable, is annulled as to all actions of the Internal Revenue Service and Revenue Officer Betty W. Murphy, retroactive to June 1, 1995.

4. The Motion to Dismiss filed jointly by the United States of America, on behalf of its agency, the Internal Revenue Service, and the Chapter 13 Trustee, Gwendolyn M. Kerney, on July 12, 1995, seeking dismissal of this bankruptcy case is GRANTED, and the above Chapter 13 case is DISMISSED.

**SO ORDERED.**

---

**13.** Code § 362(h) provides that "[a]n individual *injured* by any willful violation of a stay ... shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C.A. § 362(h) (West 1993) (emphasis added). Given the debtor's bad faith in the filing of his Chapter 13 petition, the release of the levy by Ms. Murphy upon her discovery of the debtor's bankruptcy, and that none of the pension benefits were diverted to the IRS, the court does not deem the IRS Notice of Levy served on Martin Marietta Energy Systems, Inc. to have injured the debtor.

Furthermore, the debtor has incurred no attorney fees or other actual damages attributable to the IRS levy.

**14.** This ruling is not to suggest that this court in any way countenances violations of the automatic stay by the IRS or any other creditor. The court finds that given the circumstances of the present case, it need not determine whether the IRS "technically," as it asserts, or willfully violated the automatic stay.