137 F.3d 911
 In re Reginald WILKINSON; State of Ohio, Department of
Rehabilitation and Correction; Janet Yarrow; Lois
Rathwell-Love; Dr. Francisco Leano; Roberta Winkle; Marla
Armstrong; Bennie Kelly; and Norm Rose, Petitioners.
 No. 96-4133.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 8, 1997.
Decided March 5, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied June 17, 1998.*
 
 Todd R. Marti (argued and briefed), Office of Attorney General, Corrections Litigation Section, Columbus, OH, for Petitioners.
 Rita S. Eppler (argued and briefed), Worthington, OH, for Respondent Ann Aldrich.
 Thomas A. Downie (argued), Jori B. Naegele (briefed), Robert D. Gary (briefed), Gary, Naegele & Theado, Lorain, OH, for Plaintiff Joseph A. Smith.
 Before: MERRITT, JONES, and NORRIS, Circuit Judges.
 ALAN E. NORRIS, J., delivered the opinion of the court, in which MERRITT, J., joined. NATHANIEL R. JONES, J. (pp. 916-19), delivered a separate dissenting opinion.
 OPINION
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 This action challenges the district court's decision ordering Ohio prison officials to permit an inmate to attend a pretrial deposition conducted as part of a civil action brought by the inmate. Petitioners seek a writ of mandamus (in the nature of a writ of prohibition) directing the district court to vacate its order. The question presented is whether plaintiff Joseph Smith, an inmate at the Lorain Correctional Institution ("LORCI"), has shown a specialized need to attend a pretrial deposition, a need that outweighs the safety and security concerns of the state prison system. We conclude that he has not.
 
 I.
 
 2
 Plaintiff brought actions against Janice Yarrow, Staff Librarian at LORCI, Norman Rose, Warden at LORCI, and four other prison officials at LORCI, alleging violations of the Eighth Amendment and denial of access to legal materials. Plaintiff's actions were brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 18 U.S.C. §§ 241 and 242. The district court consolidated plaintiff's three actions and appointed counsel to represent him.[1] Soon thereafter, defendants filed a consolidated motion for summary judgment that was denied without prejudice. Further discovery was then ordered.
 
 
 3
 During the discovery process, the parties agreed that certain defendants would be deposed and that the depositions would take place at LORCI. Plaintiff, who hoped to attend the depositions, was notified by officials from the Ohio Department of Rehabilitation and Correction ("O.D.R.C.") that he would not be allowed to attend. Due to the perceived difficulties in maintaining security, safety, and order in its correctional institutions, the O.D.R.C. has adopted a number of practices intended to prevent disturbances. These include the policy of not permitting inmates to be present when their counsel deposes prison staff members. The O.D.R.C. cites five reasons for the deposition policy: (1) maintaining staff authority; (2) preventing the aggrandizement of inmates; (3) avoiding unnecessary tension; (4) protecting staff morale; and (5) preserving limited resources. The O.D.R.C. does permit inmates to confer privately with counsel before and after depositions, as well as by telephone during the depositions. According to petitioners, plaintiff had nearly two years to confer with counsel, and telephone communication between counsel and himself was to take place during the depositions.
 
 
 4
 Plaintiff filed a Motion To Order Defendants To Permit Plaintiff To Attend Depositions In His Case. In the course of granting the motion, the district court acknowledged that a prisoner has no constitutional right to attend depositions in civil actions, but concluded that plaintiff was entitled to attend the depositions in this case in light of the factors outlined in In re Collins, 73 F.3d 614 (6th Cir.1995). Petitioners then filed a Petition for Writ of Mandamus with this court. The proceedings in district court have been stayed pending the outcome of this action.
 
 II.
 
 5
 This court is asked to issue a writ of mandamus ordering the district court to vacate its order. See 28 U.S.C. § 1651 ("all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"). Mandamus directed at a district court is an extreme remedy that this court utilizes only in extraordinary situations. See In re Parker, 49 F.3d 204, 206 (6th Cir.1995). For a writ to issue, we must be presented with a demonstrable abuse of discretion or conduct amounting to usurpation of judicial power. See id. Discovery rulings that raise "questions of unusual importance necessary to the economical and efficient administration of justice" are appropriate for review in mandamus. Federal Deposit Ins. Corp. v. Ernst & Whinney, 921 F.2d 83, 85 (6th Cir.1990). Because depositions are important to the proper completion of discovery and an improper ruling by the district court in this case could be said to hamper the economical and efficient administration of justice, this matter is appropriate for review in mandamus.
 
 
 6
 We begin with the fundamental rule that an incarcerated plaintiff has no constitutional right to attend the depositions taken in his civil action. In re Collins, 73 F.3d at 615. The reasoning supporting the rule was articulated by the Supreme Court nearly a half century ago:
 
 
 7
 Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Among those so limited is the otherwise unqualified right given by § 272 of the Judicial Code, 28 U.S.C. § 394 [now 28 U.S.C. § 1654] to parties in all courts of the United States to "plead and manage their own causes personally."
 
 
 8
 Price v. Johnston, 334 U.S. 266, 285-86, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948), overruled on other grounds by McCleskey v. Zant, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). We often have employed the Supreme Court's reasoning in the context of limits placed upon prison inmates' participation in their own civil litigation. In fact, in Holt v. Pitts, 619 F.2d 558 (6th Cir.1980), this court noted that "[g]enerally speaking, prisoners who bring civil actions, including prisoners who bring actions under the rights statute, 42 U.S.C. § 1983, have no right to be personally present at any stage of the judicial proceedings." See Holt, 619 F.2d at 560 (emphasis added).
 
 
 9
 We also recognize that the administration of state prisons is a matter consigned to the states as part of their sovereign power to enforce the criminal law. See, e.g., Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)("it is difficult to imagine an activity in which a state has a stronger interest, or one that is more intricately bound up with state laws, regulations, or procedures, than the administration of its prisons"); United States v. Michigan, 940 F.2d 143, 155 (6th Cir.1991). In the exercise of this authority, the state has the power to adopt policies it believes are best suited for managing its prisons and assuring the safety and security of those institutions.
 
 
 10
 In opposing plaintiff's motion for an order permitting him to attend the depositions, the state defendants presented to the district court evidence of the reasons that warrant its adoption of the deposition attendance policy. They also submitted an affidavit from James G. Ricketts, Ph.D., a person they say qualifies as an expert in the field of prison administration. In Ricketts' opinion:
 
 
 11
 Although there are many requirements for maintaining safety, security, and order within a prison, there are at least five that would be directly implicated by allowing inmates to be present at the deposition of staff members. Those include the need to consistently reinforce the superior/subordinate relationship between staff and inmates, the need to prevent inmates from having an opportunity to distinguish themselves amongst the inmate population, the need to avoid unnecessary tension between inmates and staff, the need to avoid circumstances and situations which undermine staff confidence, the need to efficiently utilize the limited resources available to a correctional institution.
 
 
 12
 According to Ricketts, staff authority is undermined when inmates are allowed to confront and challenge staff members during depositions, albeit through their attorneys. Permitting inmates to attend depositions will likely result in their attempt to distinguish or aggrandize themselves within the inmate population, with the result, says Ricketts, that they become more difficult to control. Furthermore, the confrontational nature of a deposition intensifies the underlying dispute between the inmate and staff member, increasing the strain between parties who frequently come in close contact with one another during normal prison routine. Ricketts concludes that staff confidence and morale likely will be undermined when staff members are confronted and challenged during depositions. This would also result in staff members becoming more reluctant to "exercise their lawful authority towards inmates with a reputation for litigiousness, thereby significantly limiting their effectiveness." Finally, the costs of inmate litigation significantly drain the resources available to prisons. According to Ricketts, the ability to "grill" staff members through depositions would provide a powerful motivation for inmates to file additional claims against prison staff.
 
 
 13
 Apparently, the district court concluded that the points raised in Ricketts' affidavit did not amount to valid security concerns, as the court noted that it was "not persuaded ... that general security is compromised when inmates are permitted to attend hearings in which they perceive themselves to be on equal footing with their superiors, unnecessary tension is created, staff confidence is undermined and resources are not efficiently utilized." We disagree and conclude that the reasons relied upon by the department were adequate to justify its deposition policy.
 
 
 14
 Despite petitioners' compelling arguments that justify the existence of the deposition policy, the general rule embodied in that policy cannot serve to ban inmate attendance at depositions in their own civil actions in all instances. Under some circumstances an inmate may be able to make a specialized showing of the necessity of his attending a particular pretrial deposition. And, when an inmate can demonstrate that his circumstances should invoke an exception to the general rule, federal courts have the power, in the exercise of their discretion, to issue a writ requiring penal authorities to produce the prisoner at federal civil litigation proceedings. Holt v. Pitts, 619 F.2d at 561.
 
 
 15
 In order to attend a pretrial deposition, then, the inmate has the burden of producing evidence that will convince the district court that his attendance at this particular deposition is required. This includes a demonstration that his physical presence will contribute significantly to a fair adjudication of his claim. Id. Furthermore, when determining whether the prisoner has made a specialized showing of need, the court must consider the interests of prison officials as well as the inmate. Collins, 73 F.3d at 615. In Collins, we outlined the relevant factors a district court should weigh in exercising its discretion in making this determination. The factors formulated in Collins include:
 
 
 16
 [T]he costs and security risks involved in transporting the inmate to the deposition site and in maintaining his presence at the deposition, the importance of the testimony of the deponent to the claims alleged, the need for the inmate to be physically present during the deposition, the inmate's individual security history, general security issues, and the availability of alternative means to accommodate the concerns of both the inmate and the prison officials.
 
 
 17
 Id. This formulation allows the district court to consider both the interests of the inmate in attending the deposition and of the prison system in maintaining security and safety in the prison.
 
 
 18
 In granting plaintiff's motion to attend the depositions, the district court improperly placed the burden upon petitioners to establish that plaintiff should not be permitted to attend. In lieu of citing any evidence that plaintiff may have put forward to argue that his attendance was necessary, the court observed that "although there is no absolute need for Smith to be physically present during these depositions, ... Smith may be able to assist his attorneys with personal knowledge and facts that are relevant to his case...." After discussing the Collins factors in the context of assigning to petitioners the task of demonstrating that plaintiff should not attend the deposition, the court concluded that "Smith's presence at the depositions could contribute significantly to the fair adjudication of his claims." These observations come nowhere near what is required for a prisoner to show that his circumstances demonstrate a specialized need for an exception to be granted to the general rule of non-attendance. Otherwise, the exception would swallow up the general rule, since a prisoner would nearly always be able to demonstrate that his presence at a deposition "may" prove beneficial to his counsel and "could" contribute to a fair adjudication.
 
 III.
 
 19
 Accordingly, we conclude that the district court abused its discretion in ordering the petitioners to permit Smith to attend the depositions. The petition for the writ of mandamus is granted to the extent that the order of the district court is vacated unless Joseph Smith is able to make the specialized showing of need required by this opinion.
 
 
 20
 NATHANIEL R. JONES, Circuit Judge, dissenting.
 
 
 21
 I am troubled by the majority's willingness to vary from well-established procedure by imposing upon the district court's discretion to grant a routine order permitting an inmate prisoner to attend a deposition in his civil case and, further, placing the burden on that inmate to articulate reasons why he should be empowered to attend the depositions at issue. In light of my concerns, I respectfully dissent.
 
 
 22
 In this case, the prison officials had sufficient notice of the deposition dates to notify the district court of their desire to exclude Smith on the basis of an unwritten policy against prisoner attendance. Yet, petitioners chose to notify respondent Smith of their objections to his presence just two days prior to the commencement of the depositions at issue. Upon their refusal, Smith filed a motion to attend the depositions, which would have been held on the prison grounds. By issuing a writ of mandamus, I believe that the majority today has stripped Collinsof its approach to limiting prisoner attendance in cases in which such attendance would be impractical or perfunctory in favor of a rule that presumes that prisoners may not attend depositions absent a special showing of need. With that in mind, I cannot agree that a writ of mandamus is an appropriate remedy.
 
 
 23
 I note at the outset that a district court is given substantial discretion over pretrial matters such as the conduct of discovery. See Chemical & Indus. Corp. v. Druffel, 301 F.2d 126, 129 (6th Cir.1962) ("Under the rules, the extent of discovery and the use of protective orders is clearly within the discretion of the trial judge."); see also Lewelling v. Farmers Insurance of Columbus, Inc., 879 F.2d 212, 218 (6th Cir.1989) ("The district court's decisions to award sanctions and issue a protective order are within the broad discretion of the district court in managing the case."); Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1505 (11th Cir.1985) ("A trial court has wide discretion in determining the scope and effect of discovery.").
 
 
 24
 As the majority rightly points out, the writ of mandamus is a drastic remedy and may be invoked only in cases where a petitioner can demonstrate a clear and indisputable right to the relief sought. See Will, U.S. District Judge v. Calvert Fire Ins. Co., 437 U.S. 655, 661-62, 98 S.Ct. 2552, 2556-57, 57 L.Ed.2d 504 (1978); In re Parker, 49 F.3d 204, 206 (6th Cir.1995). In considering the appropriateness of the writ, this circuit has borrowed a guideline approached used by the Ninth Circuit, which takes into account five factors, including: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft-repeated error, or manifests persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems, or issues of law of first impression. In re Bendectin Products Liability Litig., 749 F.2d 300, 303-304 (6th Cir.1984) (citing Bauman v. United States District Court, 557 F.2d 650, 654 (9th cir.1977)). We must balance these factors to determine that a writ of mandamus is required. Id. Upon such consideration, I conclude that such an extreme remedy is unwarranted here. Conceding the first two factors for the sake of argument, the final three factors all weigh in favor of the respondents.
 
 
 25
 First, I do not believe that the trial court clearly erred by granting the order permitting Smith's attendance. The Collins case, a decision of this court heavily relied upon by the majority, demands that a district court balance the interests of the prison staff and the prisoner, not simply the former. In re Collins, 73 F.3d 614, 615 (6th Cir.1995). An examination of the records shows that the district court dutifully considered both interests in weighing the five factors deemed relevant in that decision, including (1) the costs and security risks involved in transporting a prisoner to a deposition cite and in maintaining his presence at a deposition; (2) the importance of the testimony of the deponent to the claims alleged, the need for a prisoner to be physically present during a deposition; (3) the inmate's individual security history; (4) general security issues; and (5) the availability of alternative means to accommodate the concerns of both parties. Id. In its written memorandum on the issue, the district court detailed its conclusions as to each Collins factor, as the following passage indicates:
 
 
 26
 The parties do not dispute that the depositions which Smith hopes to attend will be taken at LORCI, where Smith is being housed. Therefore, the costs and security risks involved in transporting Smith to the deposition site and maintaining his presence there are negligible, if not existent....
 
 
 27
 Second, these deponents are important to the claims alleged because they are all named defendants in Smith's lawsuit. Moreover, although there is no absolute need for Smith to be physically present during these depositions, the importance of the testimony makes Smith's argument for physical presence more persuasive. Smith may be able to assist his attorneys with personal knowledge and facts that are relevant to his case but which may not have been specifically communicated to his attorneys. In addition, defendants have failed to demonstrate that Smith is a security risk.... In In re Collins, the Circuit found that plaintiff's "extensive history of violent and disruptive behavior" was a compelling reason for denying him physical access to depositions in his civil case. Collins, 73 F.3d at 616. Here, because there is no evidence that Smith has a similar history of violent and disruptive behavior, there is no compelling reason to deny him access.
 
 
 28
 This Court is not persuaded by defendant's argument that general security is compromised when inmates are permitted to attend hearings in which they perceive themselves to be on equal footing with their superiors, unnecessary tension is created, staff confidence is undermined and resources are not efficiently utilized. The fact that the Circuit has created a balancing test indicates that these general security concerns are but one factor to be weighed.
 
 
 29
 Finally defendant's claim that adequate alternatives are available to Smith. For instance, prison officials have agreed to allow Smith to confer with his attorneys before and after the depositions and have offered to allow Smith to communicate telephonically with his attorneys during the depositions. Such measures, however, seem impractical. Smith's attorneys would be forced to call him whenever they needed certain information or assistance, which would only prolong the depositions. Moreover, it is not clear how the attorneys are supposed to know when Smith has information to offer. Even if these were adequate, the fact that Smith is not an individual security risk, the importance of the testimony of those deposed, and the fact that the depositions are scheduled to be taken at LORCI weigh heavily on this Court's decision to allow Smith to be physically present. J.A. at 143-45 (Memorandum and Order).
 
 
 30
 Given this thorough, well-reasoned analysis, I cannot conclude that the district court's decision comprised clear error. To the contrary, in my judgment, the district court properly considered and decided the issue. In Collins, the prison officials submitted evidence of Collins' disruptive behavior, while Collins himself failed to submit contradictory evidence. Collins, 73 F.3d at 615. While Collins appears to encourage some demonstration by an inmate that his presence will significantly contribute to the adjudication of his claims, I read that case to require such a showing only upon an objection by the prison officials rather than as a matter of course. Once prison officials object, Collins requires that the district court engage in a careful balancing of factors, as I believe the district court did here. In short, I find that the majority has inserted a presumption where the plain intent of the Collins court appears to have been to create a flexible approach.
 
 
 31
 The prison officials have submitted generalized security concerns, as evidenced by the affidavit of Dr. James G. Ricketts, as the sole basis of the district court's alleged error requiring mandamus relief. The majority decision, which relies solely upon these general concerns, turns the rule of Collins on its proverbial ear by placing such general concerns--concerns that will be present in every case involving an inmate plaintiff--above the other four factors. Henceforward, every inmate plaintiff will have to demonstrate special reasons why his or her attendance is necessary. Finally, Smith has not requested access to a deposition away from the prison grounds as in Holt v. Pitts, 619 F.2d 558 (6th Cir.1980), nor does Smith appear to have an extensive history of disruptive conduct as an inmate as the prisoner in Collins. For these reasons, I am firm in my belief that the district court did not clearly err.
 
 
 32
 Second, I believe that the district court decision was consistent with the federal rules and thus did not offend the fourth factor of the mandamus standard by manifesting a disregard for the federal rules. Rule 26(c) of the Federal Rules of Civil Procedure allows a trial court to issue an order to exclude parties from a deposition, including a party to the litigation, upon a showing of good cause. See, e.g., Galella v. Onassis, 487 F.2d 986, 997 (2d Cir.1973) (excluding a party on the finding there was cause to believe he would harass the deponent, and he had demonstrated a complete disregard for the judicial process); Hamon Contractors, Inc. v. District Court, 877 P.2d 884, 887 (Colo.1994) (finding the exclusion of a party from pretrial depositions is only permitted rarely and under extraordinary circumstances); BCI Commun. Sys., Inc. v. Bell Atlanticom Sys., Inc., 112 F.R.D. 154, 157 (N.D.Ala.1986) (finding that there must be a proper showing to exclude a party from a deposition, and that this should be a rare event); In re Levine, 101 B.R. 260, 262-63 (Bankr.D.Colo.1989) (allowing exclusion of parties from each other's depositions under "rather extraordinary" circumstances); Beacon v. R.M. Jones Apartment Rentals, 79 F.R.D. 141, 142 (N.D.Ohio 1978)(finding, under particular circumstances which involved "subtle and sophisticated questions," good cause existed to exclude parties to the suit from attendance at the deposition). The majority rightly points out that inmate plaintiffs are not entitled to the same deference as civil plaintiffs. Maj. Op. at 914. However, this court has always limited such rights only to the extent necessary to avoid denying inmate plaintiffs "adequate means of securing redress for violations of their constitutional rights." Holt v. Pitts, 619 F.2d 558, 559-560 (6th Cir.1980). The majority decision limits inmate plaintiff redress by (1) presuming that the inmate plaintiff may not attend a deposition in his or her case and (2) placing the burden on the inmate plaintiff to demonstrate special circumstances (presumably a sufficient showing under Collins ) requiring his or her attendance. These limitations drastically reduce the chance that a prisoner will be present during deposition testimony, even in circumstances where his or her presence would be critical to the merits of the case. I do not read Collins or Holt to require these extreme limitations, and it is clear that federal rules do not impose such limitations.
 
 
 33
 Moreover, the prison officials in this case could have submitted a Rule 26(c) motion to exclude Smith and, in fact, had several months prior the scheduled dates of the depositions to do so.[1] They did not file such a motion. Instead, they unilaterally refused to allow the depositions to proceed with Smith physically present, forcing Smith to request the order granted in this case.[2] Permitting the prison officials to now excuse their actions based on general security concerns, where they failed to invoke the remedy afforded them under the federal rules, is at the very least dubious.
 
 
 34
 Finally, as to the fifth mandamus factor, I am not prepared to assert that the district court has raised new and important questions of law. I believe that today's majority decision, however, may do so. The decision of the majority presents yet another barrier to the bringing of civil complaints by inmates, placing the burden of proof upon inmates to show special circumstances necessitating their attendance at such depositions. While prisoners are not afforded a constitutional right to attendance, neither are civil plaintiffs given such a right, as evidenced by the existence of Rule 26(c). Further, I do not read Collins or Holt to place the burden on an inmate plaintiff to justify his attendance absent a formal objection by the defendants. Thus, the presumption-based rule adopted by the majority today ensures that our already overburdened district courts will have to entertain a Collins hearing in every single case involving an inmate plaintiff.
 
 
 35
 The unfortunate result rendered today casts an ominous cloud over inmate participation in civil case discovery and district court discretion in managing pretrial orders in similar civil cases. I cannot support a grant of mandamus relief where the district court followed the settled rules of law based on the facts before it. Accordingly, I DISSENT.
 
 
 
 *
 Judge Jones would grant rehearing for the reasons stated in his dissent
 
 
 [1]
 Plaintiff is no stranger to the litigation process. In the last four years alone, he has pursued six lawsuits in federal courts, filing more than 241 pro se motions, memoranda, and other pleadings. These motions included 19 requests for extraordinary injunctive relief
 
 
 [1]
 Indeed, it would seem that an official prison policy excluding inmates from depositions would have been raised by the petitioners earlier than the critical moment in which the depositions were to take place
 
 
 [2]
 Smith's request might be better considered as a motion to compel enforcement of a prior order (the discovery calendar sanctioned by the district court) or a response to a Rule 26(c) motion to exclude as evidenced by the petitioner's refusal to permit his attendance. Either way, the district court properly exercised its discretion and, in the latter instance, fairly weighed the Collins factors to find in favor of Smith